IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| KAITLIN VARNEY, | : | Case No. 1:24-cv-624 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| HEALTH CAROUSEL, LLC, | : | |
| | : | |
| Defendant. | : | |

## ORDER AND OPINION

This matter is before the Court on Defendant's Motions to Dismiss (Docs. 5, 7).

Plaintiff filed an Amended Complaint (Doc. 6) following Defendant's Motion to Dismiss

(Doc. 5), prompting Defendant to file a Motion to Dismiss Plaintiff's Amended Complaint

(Doc. 7). Plaintiff then filed a Response in Opposition (Doc. 8), to which Defendant filed

a Reply in Support (Doc. 9). This matter is therefore ripe for the Court's review. For the

following reasons, Defendant's Motion to Dismiss (Doc. 5) is **DENIED AS MOOT** and

Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 7) is **DENIED**.

## FACTS AS ALLEGED

Plaintiff Kaitlin Varney worked for Defendant Health Carousel, LLC as an

Accounts Receivable Specialist. (Am. Compl., Doc. 6, ¶ 20.) On April 25, 2023, Plaintiff

gave birth. (*Id.* at ¶ 26.) When Plaintiff returned to work on July 18, 2023, she informed

her manager that she would need to express breast milk with the assistance of a pump

during work hours. (*Id.* at ¶¶ 28-30.) Her manager expressed disgust at Plaintiff's use of

the term "pumping" and discouraged Plaintiff from making coworkers aware that she would be expressing breast milk at work. (*Id.* at ¶¶ 31-32.)

Plaintiff requested additional break time to express breast milk at work, and Defendant "ostensibly approved" this accommodation. (Am. Compl., Doc. 6, ¶¶ 33-34.) On July 25, 2023, Plaintiff and her coworkers were invited to share personal information during a meeting. (*Id.* at ¶¶ 35-37.) Plaintiff responded by sharing that her baby had spit up milk on Plaintiff just as she was about to leave for work. (*Id.* at ¶ 38.) Plaintiff's manager expressed disgust at this story and criticized Plaintiff for sharing. (*Id.* at ¶ 39.) Following their manager's lead, other colleagues expressed disgust. (*Id.* at ¶ 40.) Plaintiff reported this incident to human resources, but Defendant failed to take prompt remedial action. (*Id.* at ¶¶ 42-43.) Plaintiff's coworkers treated her "more coldly" after she made the report, and her manager continued expressing frustration and disgust with Plaintiff's pumping accommodation. (*Id.* at ¶¶ 44-45.)

On September 26, 2023, Plaintiff requested permission from her manager to work overtime hours as an accommodation. (Am. Compl., Doc. 6, ¶ 48.) This request was made because Plaintiff's longer pumping breaks were interfering with her ability to complete her work. (*Id.* at ¶ 47.) Plaintiff's manager denied this request and refused to further engage in the interactive process or offer potential alternative accommodations. (*Id.* at ¶¶ 49-50.) Instead, Plaintiff's manager routinely criticized Plaintiff for the length of her pumping breaks in an attempt to coerce her into taking shorter breaks. (*Id.* at ¶ 52.) Plaintiff reported her manager's refusal to accommodate—as well as the lactation-based harassment—to human resources, but no prompt remedial action was taken. (*Id.* at ¶¶

2

53-54.) Plaintiff's manager retaliated against Plaintiff for making this report by intensifying the scrutiny of the length of Plaintiff's pumping breaks, being overly critical of Plaintiff's work, and assigning Plaintiff more work than she could complete. (*Id.* at ¶¶ 55-56.)

On October 12, 2023, Plaintiff lactated through her shirt while at work and asked her manager if she could leave to change her shirt. (Am. Compl., Doc. 6, ¶¶ 57-58.) This request was ignored. (*Id.* at ¶ 59.) The following day, Plaintiff sought mental health treatment regarding the "routine" breastfeeding-related humiliation and harassment that she experienced from her manager. (*Id.* at ¶ 60.) Over the next few weeks, Plaintiff's mental health continued to decline as her manager sustained her harassment and intimidation. (*Id.* at ¶ 61.) Plaintiff's employment with Defendant came to an end on November 7, 2023, when she resigned in response to her manager's harassment and intimidation as to her breastfeeding and pumping breaks. (*Id.* at ¶¶ 62-64.)

## PROCEDURAL HISTORY

Plaintiff initiated this federal suit on October 29, 2024. (*See* Compl., Doc. 1.) Defendant filed a Motion to Dismiss (Doc. 5) and then Plaintiff filed an Amended Complaint (Doc. 6). Plaintiff now brings the following claims: (1) Pregnancy Discrimination in Violation of Title VII and Ohio Law; (2) Failure to Accommodate in Violation of the Pregnant Workers Fairness Act; (3) Interference with Rights under the Pregnant Workers Fairness Act; and (4) Retaliation in Violation of Title VII, Ohio Law, the Pregnant Workers Fairness Act, and the Providing Urgent Maternal Protections for

3

Nursing Mothers Act. (Am. Compl., Doc. 6, ¶¶ 78-155.) Defendant responded by filing a Motion to Dismiss Plaintiff's Amended Complaint (Doc. 7).

## LAW AND ANALYSIS

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests a plaintiff's cause of action as stated in a complaint. *Golden v. City of Columbus*, 404 F.3d 950, 958 (6th Cir. 2005); Fed. R. Civ. P. 12(b)(6). A claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts accept all factual allegations as true and construe them in the light most favorable to the plaintiff. *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018). However, courts are not bound to do the same for a complaint's legal conclusions. *Twombly*, 550 U.S. at 555.

Defendant moves to dismiss each of Plaintiff's claims for failure to state a claim. The Court will consider each claim in turn.

### I.    Pregnancy Discrimination Claims

Plaintiff brings pregnancy discrimination claims under Title VII of the Civil Rights Act—as amended by the Pregnancy Discrimination Act ("PDA")—and under Ohio's analogous state law. (Am. Compl., Doc. 6, ¶¶ 78-93.) Courts apply a shared standard for these claims under both federal and Ohio law. *See Tysinger v. Police Dept. of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006). Under Title VII, an employer may not "discharge any individual, or otherwise . . . discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). By defining "on the basis of sex" to include discrimination "because of or on the basis of pregnancy, childbirth, or related

4

medical conditions," the PDA clarified "that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy." 42 U.S.C. § 2000e(k); *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 210 (2015).

The prima facie elements for a pregnancy discrimination claim are fourfold: (1) the plaintiff was pregnant; (2) she was qualified for her job; (3) she was subjected to an adverse employment decision; and (4) there was a nexus between her pregnancy and the adverse employment decision. *Cline v. Cath. Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000). A plaintiff need not plead a prima facie case to survive a motion to dismiss. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002); *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012). Rather, a plaintiff "must allege sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference" of discrimination. *Keys*, 684 F.3d at 610 (quotations omitted). Put another way, the well-traveled "plausibility pleading standard of Rule 12(b)(6) applies." *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 842 (6th Cir. 2024).

As a preliminary matter, the Court first considers the type of pregnancy discrimination claims that Plaintiff brings forth. "The Supreme Court has explained that under Title VII, a plaintiff may bring a claim alleging that either (1) an employer engaged in 'discrete discriminatory acts' such as 'termination, failure to promote, denial of transfer, or refusal to hire'; or (2) the employer's 'repeated conduct' created a hostile work environment." *Ogbonna-McGruder*, 91 F.4th at 840 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002); *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 993-94 (6th Cir. 2009)).

In her Response, Plaintiff appears to characterize her pregnancy discrimination claims as related to "wrongful termination" and "constructive discharge" but not as alleging a hostile work environment. (Response, Doc. 8, Pg. ID 74-75.) Precedent instructs courts to "look beyond the face of plaintiff's allegations and the labels used to describe her claims and . . . to evaluate the *substance* of plaintiff's claims." *Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514, 519 (6th Cir. 2012). From the Court's best reading, the Amended Complaint—which serves as the touchstone in the Court's analysis—alleges a hostile work environment and Plaintiff's constructive discharge as the basis for these two pregnancy discrimination claims. (Am. Compl., Doc. 6, ¶¶ 82, 84, 90, 92 (alleging that Defendant "maintained a work environment hostile to pregnant women")).) The Court will therefore analyze these claims under what the Supreme Court has termed a "hostile-environment constructive discharge" theory. *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004).

"The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that [her] working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Green v. Brennan*, 578 U.S. 547, 555 (2016); *see also Cooper v. Doglencorp, LLC*, 93 F.4th 360, 373 (6th Cir. 2024). When a plaintiff "only alleges that she resigned because of *discriminatory harassment*," she must ultimately "demonstrate a discriminatory work environment even more egregious than the high standard for hostile work environment." *Laster v. City of Kalamazoo*, 746 F.3d 714, 728 (6th Cir. 2014) (quotation omitted).

6

"When determining whether a constructive discharge occurred, courts consider the same types of circumstances as for a hostile-work-environment claim." *Townsend v. Rockwell Automation, Inc.*, 852 F. App'x 1011, 1017 (6th Cir. 2021) (citing *Goldmeier v. Allstate Ins. Co.*, 337 F.3d 629, 635 (6th Cir. 2003)). A hostile work environment involves allegations that a plaintiff's "'workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Ogbonna-McGruder*, 91 F.4th at 839 (quoting *Nat'l R.R. Passenger Corp.*, 536 U.S. at 116 (cleaned up)). "In assessing the severity or pervasiveness of alleged harassment, the Court considers the totality of the circumstances—namely 'the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's performance.'" *Bryant v. City of Cincinnati Fire Dep't*, No. 1:24-CV-119, 2025 WL 860931, at *4 (S.D. Ohio Mar. 19, 2025) (quotation omitted). That being said, the Court acknowledges that "it is usually inappropriate to dismiss a plaintiff's hostile work environment claim at the pleadings stage on the basis that the conduct she has alleged was not abusive enough." *Mesbah v. Univ. of Louisville*, No. 3:22-CV-567, 2023 WL 6050232, at *10 (W.D. Ky. Sept. 15, 2023) (quotation omitted). As the Sixth Circuit instructs, "whether harassment was severe or pervasive [is] quintessentially a question of fact." *Schlosser v. VRHabilis, LLC*, 113 F.4th 674, 687 (6th Cir. 2024) (quotation omitted).

Defendant argues that Plaintiff only alleges "isolated incidents" that fall short of adequately alleging a hostile work environment or constructive discharge. (Motion, Doc.

7, Pg. ID 62-64.) Plaintiff does specifically allege certain instances of harassment and humiliation: Plaintiff's manager expressed disgust at Plaintiff's use of the word "pumping," discouraged Plaintiff from letting her coworkers know that she was expressing breastmilk, ignored Plaintiff's request to go home and change her shirt that had milk on it, and criticized Plaintiff for sharing an experience where her baby had spit up milk. (Am. Compl., Doc. 6, ¶¶ 31-32, 38-39, 57-60.) Additionally, Plaintiff alleges that her colleagues treated her "coldly" and that Defendant failed to take prompt remedial action when Plaintiff twice reported her manager's harassment. (*Id.* at ¶¶ 43-44, 54.) Together, these instances plausibly represent examples of "routine humiliation and harassment" related to Plaintiff's breastfeeding. (*Id.* at ¶¶ 60-61.) Plaintiff alleges that this humiliation and harassment caused her mental health to decline, making it necessary to seek treatment, and to ultimately resign. (*Id.* at ¶¶ 60-63.) As for the timeframe, these allegations all took place within a span of approximately four months. (*See id.* at ¶¶ 28, 35, 62.)

Rather than alleging merely a few "isolated incidents," the Amended Complaint—read in the light most favorable to Plaintiff at this early stage of litigation—provides examples of pervasive and "routine" harassment and humiliation. This matters. After all, "the issue is not whether each incident of harassment *standing alone* is sufficient to sustain the cause of action in a hostile environment case, but whether—taken together—the reported incidents make out such a case." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999). The Sixth Circuit, in turn, has explained that "comments and harassing acts of a continual nature are more likely to be deemed pervasive and evidence of an

objectively hostile work environment." *Johnson v. Ford Motor Co.*, 13 F.4th 493, 505 (6th Cir. 2021) (quotations omitted); *see also Bruce v. Adams & Reese, LLP*, No. 3:24-CV-875, 2025 WL 611071, at *9 (M.D. Tenn. Feb. 25, 2025) (allowing a hostile work environment claim to proceed when three examples of harassing conduct painted a picture of continuous and pervasive conduct).

Defendant proposes that *Ogbonna-McGruder v. Austin Peay State University*, 91 F.4th 833 (6th Cir. 2024), counsels in favor of dismissal. (Reply, Doc. 9, Pg. ID 85.) In *Ogbonna-McGruder*, the Sixth Circuit affirmed the district court's dismissal of a hostile work environment claim for failure to plausibly allege severity or pervasiveness. 91 F.4th at 841. But, that case involved "infrequent" events that occurred over a span of around two and a half years. *Id.* In addition to the "routine" harassment within the more compressed timeframe in the case at hand, Plaintiff also alleges that the situation caused her mental health to decline to the point of seeking treatment; such considerations add plausibility to the situation unreasonably interfering with her work performance. Thus, Plaintiff has plausibly alleged a hostile work environment.

In addition to the hostile work environment standard, courts within the Sixth Circuit consider seven guideposts in assessing a potential constructive discharge: "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status." *Townsend*, 852 F. App'x at 569.

In light of the alleged hostile work environment examined above, the Court finds it premature to dismiss plaintiff's pregnancy discrimination claims. *See, e.g., Sobers v. Ascension Providence Hosp.*, No. 2:23-CV-12126, 2024 WL 1776335, at *5 (E.D. Mich. Apr. 23, 2024) (denying motion to dismiss constructive discharge claim); *Allen-Walker v. Shelby Cnty. Gov't*, No. 2:23-CV-2746, 2024 WL 3798006, at *5 (W.D. Tenn. Aug. 13, 2024) (highlighting the allegation of "ongoing" harassment and permitting constructive discharge claim to proceed). As frequently recognized by courts, the objective standard of assessing whether a reasonable person would find the circumstances intolerable is often better suited for a more developed factual record. *See, e.g., Newbold v. HealthEquity, Inc.*, No. 2:24-CV-103, 2025 WL 276364, at *12 (D. Utah Jan. 23, 2025); *Belton v. Allegheny Gen. Hosp.*, 703 F. Supp. 3d 685, 694 (W.D. Pa. 2023). Thus, Plaintiff's pregnancy discrimination claims will not be dismissed at this time.

## II.     Retaliation in Violation of Title VII and Ohio Law

In order to set forth a prima facie retaliation claim under Title VII or Ohio law, a plaintiff must show that (1) she engaged in a protected activity, (2) the defendant knew she engaged in the protected activity, (3) she suffered an adverse employment action, and (4) her protected activity was the but-for cause of the adverse employment action. *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 448 (6th Cir. 2020) (citations omitted); *Threat v. City of Cleveland*, 6 F.4th 672, 681 (6th Cir. 2021) (applying same standard under Ohio law). At the motion to dismiss stage, though, the Court's analysis is once again guided by its judicial experience, common sense, and the plausibility standard. *See Keys*, 684, F.3d at 609-10.

The parties focus upon the adverse employment action inquiry. Defendant contends that Plaintiff's retaliation claims fail because Plaintiff has not adequately pled constructive notice or another adverse employment action. (Motion, Doc. 7, Pg. ID 65-67.) Plaintiff responds that she faced retaliation because, among other things, she was treated worse and harassed after making her protected complaints. (Response, Doc. 8, Pg. ID 77.)

Importantly, "a plaintiff's burden of establishing a materially adverse employment action is less onerous in the retaliation context than in the anti-discrimination context." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595-96 (6th Cir. 2007) (citing *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-71 (2006)). "To establish a materially adverse employment action for a retaliation claim, a plaintiff need only allege that 'a reasonable employee would have found the challenged action materially adverse,' meaning that 'it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Bender v. Gen. Dynamics Land Sys., Inc.*, No. 2:19-CV-13177, 2020 WL 4366049, at *7 (E.D. Mich. July 30, 2020) (quoting *Laster*, 746 F.3d at 731); *see also Mesbah v. Univ. of Louisville*, No. 3:22-CV-567, 2023 WL 6050232, at *13 (W.D. Ky. Sept. 15, 2023) (characterizing this standard as a "relatively low bar"). This involves "an inherently fact-specific inquiry that necessarily depends upon the particular circumstances of the case." *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 769 (6th Cir. 2008) (cleaned up).

Turning to the Complaint, Plaintiff alleges that her manager retaliated against her for reporting lactation harassment by (1) intensifying scrutiny of the length of her pumping breaks, (2) being overly critical of her work, (3) and assigning more work than

she could complete. (Am. Compl., Doc. 6, ¶¶ 55-56.) Courts have recognized that an "increased" or "excessive" workload can contribute towards an adverse employment action. *See, e.g., Irving v. Carr*, No. 2:16-CV-728, 2019 WL 4929044, at *10 (S.D. Ohio Oct. 7, 2019); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 88 (2d Cir. 2015); *Staggers v. Becerra*, No. 21-CV-231, 2021 WL 5989212, at *23 (D. Md. Dec. 17, 2021) ("The alleged excessive assignments might dissuade a reasonable worker from engaging in protected activity.") Construing the Complaint as a whole in the light most favorable to Plaintiff, the Court finds that these circumstances "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Laster*, 746 F.3d at 732; *see also Morris v. Austin Peay State Univ.*, 438 F. Supp. 3d 842, 846-47 (M.D. Tenn. 2020); *Lange v. Michigan Dep't of Corrs.*, No. 21-CV-10317, 2021 WL 12245472, at *3 (E.D. Mich. June 8, 2021). Plaintiff's retaliation claims under Title VII and Ohio law may therefore proceed at this time.

## III.    Retaliation in Violation of the PUMP Act

The Providing Urgent Maternal Protections for Nursing Mothers Act ("PUMP Act") mandates that employers provide, among other things, "a reasonable break time for an employee to express breast milk for such employee's nursing child for 1 year after the child's birth each time such employee has need to express the milk." 29 U.S.C. § 218d(a)(1). Plaintiff connects the PUMP Act to the Fair Labor Standards Act's ("FLSA's") retaliation provisions, which make it unlawful for an employer "to discharge or in any other manner discriminate against" an employee or a former employee "because such

12

employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." (Compl., Doc. 6, ¶ 150 (quoting 29 U.S.C. § 215(a)(3)).)

Defendant argues that this claim fails because Plaintiff was provided with reasonable break time. (Motion, Doc. 7, Pg. ID 68.) Beyond this, the parties combine the PUMP Act retaliation claim with the other retaliation claims in their briefing. (*See* Response, Doc. 8, Pg. ID 76-79; Reply, Doc. 9, Pg. ID 87-89.) Plaintiff alleges that Defendant discriminated and retaliated against her after she filed a complaint about her manager's harassment, including her right to exercise reasonable break times under the PUMP Act. (Am. Compl., Doc. 6, ¶¶ 52-56, 147-49.) For the reasons explained above, the Court will not dismiss this claim at this time.

## IV.    Failure to Accommodate under the Pregnant Workers Fairness Act

Next, Defendant seeks dismissal of Plaintiff's claims under the Pregnant Workers Fairness Act ("PWFA"). Enacted in December 2022, the PWFA requires employers to "make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 2000gg-1(1). A "known limitation" includes a "physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions." *Id.* § 2000gg(4). "The framework for failure to accommodate claims is similar to the framework for other employment discrimination claims, but plaintiffs do not need to 'prove that they suffered an adverse employment action separate from the failure of the employer to reasonably accommodate

13

the employee.'" *Denoewer v. Union Cnty. Indus.*, 611 F. Supp. 3d 458, 476 (S.D. Ohio 2020) (quoting *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 299 (6th Cir. 2019)).

Defendant asserts that Plaintiff's claim for failure to accommodate should be dismissed because Defendant provided Plaintiff with break time and a space to pump. (Motion, Doc. 7, Pg. ID 64.) Moreover, Defendant claims that Plaintiff's additional request for more work hours to complete assigned tasks was not a reasonable request required under the law. (Reply, Doc. 9, Pg. ID 85.) Plaintiff responds by emphasizing that—while Defendant partially granted the initial request for accommodation—Defendant denied the modified work-schedule accommodation and refused to engage in the interactive process to identify alternative accommodations. (Response, Doc. 8, Pg. ID 75.)

Once again, the Court is cognizant of the present procedural posture. As courts frequently recognize, the "reasonableness" inquiry surrounding accommodations is often premature at the motion to dismiss stage. *See, e.g., Ability Ctr. of Greater Toledo v. Lumpkin*, 808 F. Supp. 2d 1003, 1024-25 (N.D. Ohio 2011); *Trimuel v. Chicago Hous. Auth.*, 695 F. Supp. 3d 972, 981 (N.D. Ill. 2023); *Pappas v. D.C.*, 513 F. Supp. 3d 64, 96-97 (D.D.C. 2021) (collecting cases finding the same). Plaintiff's claim for failure to accommodate will not be dismissed at this time.

## V.     Interference with Rights under the Pregnant Workers Fairness Act

Relatedly, Plaintiff brings a claim for interference with PWFA rights. (Am. Compl., Doc. 6, ¶¶ 109-22.) The PWFA prohibits "coerc[ing], threaten[ing], or interfer[ing] with any individual in the exercise or enjoyment of, or on account of such individual having

exercised or enjoyed . . . any right granted or protected by this chapter." 42 U.S.C. § 2000gg-2(f)(2).

Defendant contends that this claim fails because it provided adequate space and time for pumping and Plaintiff did not allege that any harassment actually kept her from exercising her rights. (Motion, Doc. 7, Pg. ID 65; Reply, Doc. 9, Pg. ID 86-87.) However, after comparing the statutory text with the Complaint, the Court finds that Plaintiff has plausibly stated an interference claim. Specifically, Plaintiff alleges that her manager routinely interfered by criticizing and harassing her for the length of pumping breaks in order to intimidate and coerce her into taking shorter pumping breaks. (Am. Compl., Doc. 6, ¶¶ 52, 117-18, 120-21.) The statutory language, to be sure, covers both the exercise and enjoyment of the rights in question. Thus, the Court will not dismiss Plaintiff's interference claim at this time.

## VI.   Retaliation in Violation of the Pregnant Workers Fairness Act

Plaintiff also brings a claim for retaliation in violation of the PWFA. (Am. Compl., Doc. 6, ¶¶ 134-38.) The particular provision cited by Plaintiff prohibits "discriminat[ion] against any employee because such employee has opposed any act or practice made unlawful by this chapter or because such employee made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." (*Id.* at ¶¶ 134-138 (quoting 42 U.S.C. § 2000gg-2(f)(1)).)

Defendant posits that this claim should fail for the same reasons as Plaintiff's Title VII and Ohio law retaliation claims: failure to plausibly allege any retaliatory adverse employment action. (Motion, Doc. 7, Pg. ID 67.) The parties otherwise combine the PWFA

retaliation claim with the other retaliation claims in their briefing. (*See* Response, Doc. 8, Pg. ID 76-79; Reply, Doc. 9, Pg. ID 87-89.) Plaintiff alleges that she opposed her manager's harassment of Plaintiff taking time to pump by making a protected complaint, which caused increased scrutiny of her length of breaks, her manager becoming overly critical of her work, and being assigned more work than she could complete. (Am. Compl., Doc. 6, ¶¶ 52-56, 135-38.) Thus, for the reasons previously discussed, this claim may proceed at this time.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. 5) is **DENIED AS MOOT** and Defendant's Motion to Dismiss First Amended Complaint (Doc. 7) is **DENIED**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND